# EXHIBIT 3

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| **DONOVAN ROBINSON,**<br>     **PLAINTIFF,**<br><br>     *v.*<br><br>**BOARD OF EDUCATION FOR THE CITY OF CHICAGO,** *et al.*,<br>     **DEFENDANTS.** | **NO. 2021 L 001047** |
| **JOHN JOHNSON,**<br>     **PLAINTIFF,**<br><br>     v.<br><br>**BOARD OF EDUCATION FOR THE CITY OF CHICAGO,** *et al.*,<br><br>     **DEFENDANTS.** | **NO. 2021 L 001072** |

**ORDER**

Plaintiffs Donovan Robinson and John Johnson move to amend their complaints. The court grants their motion in part. It grants them leave to file the proposed amended complaints, but denies the motion in all other respects. Defendants Board of Education of the City of Chicago, Michael Passman, Laura LeMone, and Deb Spraggins shall file their answer by July 24, 2023, at 8:45 AM.

Further, the court denies Defendants' Motion *in limine* #18 and #19. All previous orders to stand.

**Entered the 20th of July 2023**
**Chicago, Illinois**

Circuit Judge Thomas More Donnelly

JUL 2 0 2023

Circuit Court - 1803

_____

**Thomas More Donnelly**
**Judge**
**Circuit Court of Cook County**

```
STATE OF ILLINOIS      )
                       ) SS.
COUNTY OF COOK         )

        IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT, LAW DIVISION


  DONOVAN ROBINSON,                     )
                                        )
                                        )
                    Plaintiff,          )
                                        )
          vs.                           ) Case No. 2021 L 001047
                                        ) Hon. Thomas More
  BOARD OF EDUCATION OF THE             ) Donnelly
  CITY OF CHICAGO d/b/a                 )
  CHICAGO PUBLIC SCHOOLS,               ) Calendar W
  et al.,                               )
                                        )
                                        )
                    Defendants.         )
  _____   )
  JOHN JOHNSON,                         )
                                        )
                    Plaintiff           ) Case No. 2021 L 001072
                                        ) "Consolidated"
          vs.                           )
                                        )
  BOARD OF EDUCATION OF THE             )
  CITY OF CHICAGO d/b/a                 )
  CHICAGO PUBLIC SCHOOLS,               )
  et al.,                               )
                                        )
                    Defendants.         )
```

        Report of proceedings had at the hearing in

the above-entitled cause before the HONORABLE

THOMAS MORE DONNELLY, Judge of said Court, commencing at

10:20 a.m., on the 14th day of July, 2023.



APPEARANCES:

      GINSBERG JACOBS, LLC, by
      MR. WILLIAM CHOSLOVSKY
          On behalf of the Plaintiff;

      BOARD OF EDUCATION OF THE CITY OF CHICAGO, by
      MS. ELIZABETH BARTON
      MR. BRIAN KOLP
          On behalf of the Defendants;

      GORDON REES SCULLY MANSUKHANI, LLP, by
      MS. SUSAN BEST
      MR. MAXIMILIAN BUNGERT
          On behalf of Defendants.

           *    *    *    *    *    *



about what's going on.  They're just denying what it relates to and I don't have that evidence.

THE COURT:  And I welcome your motion to reconsider.  Let's move onto defendant's motion in limine number 18.

MS. BEST:  Sure.  Judge, 18 and 19 are similar in their motions to bar plaintiff's experts in this case.  They have two experts, Sameer Somal and Collin Gram (phonetic.)  They're pretty robust motions and we include their reports that are very lengthy.  They're probably about 75 pages for Somal.

THE COURT:  So rarely are these motions ever granted?  So you got to have, like, a silver bullet.  So what's your silver bullet?

MS. BEST:  I would say number one, that they provide opinions that go directly to the issues of what the jury is to decide.  And they're not qualified.

THE COURT:  And that's not a basis in Illinois.

MS. BEST:  And they're not qualified, whatsoever.  Number two, they have no methodology whatsoever.  So Mister --

THE COURT:  As to qualifications, generally if they have some testimony or if they have some background, Illinois is very liberal in allowing experts.  We're not



gatekeepers unlike the federal courts where there's a very strict gatekeeper function.  We're liberal in allowing expert witnesses to testify and they're generally questions about qualifications go to the weight of their testimony not admissibility.  If there's no methodology that that is a stronger argument.  So why don't we go, you know.  A witness may testify as an expert if it is shown that he or she is qualified to do so because a study, practice, education, observation and the witness possesses something beyond what another person knows.

MS. BEST:  Right.  And that point goes to --

THE COURT:  It's a very minimal --

MS. BEST:  I agree.

THE COURT:  -- threshold.  So, generally this is --

MS. BEST:  Right.

THE COURT:  You don't win these motions.  But if they have no methodology, why don't we focus on that one.

MS. BEST:  Okay.  If I can make one point.  And you brought it up other than an ordinary person.  What these opinions are essentially that they had no background and qualifications that they are just coming out, picking someone out and saying, "please give opinions as to the,



you know, the legal analysis and the damages."  That they have no background other than reading the documents and presenting them.  What the jury and the lawyers are supposed to do.  So that's my point in the qualifications.

With respect to the methodology, it's outlined in the motion there that other than gathering facts, absorbing them, and regurgitating a time line, that is the extent of the methodology for Mr. McMahon (phonetic).  So, again, it goes back to, this is an ordinary person anyone, any jury member, can also do that and that's our job as lawyer.  And so, he's the first-time witness, expert witness, with that type of methodology.  And if it is, it's never been accepted and it's not certainly not generally accepted.

THE COURT:  Will he testify that the particular methodology is reasonable?  Will there be some testimony?

MS. BEST:  He could not articulate his methodology.  So there's no scientific methodology behind there. There's no mathematical, you know, there's -- basically he patches it as a journalistic.  But, again, it's what I outlined.

THE COURT:  So what is the nature of this expert



testimony?  Tell me a little bit about it.

MS. BEST:  They give and I want to -- they are giving specific --

THE COURT:  This is Somal.  That's the first one?

MS. BEST:  Sure, but there's a lot of overlap.

THE COURT:  And then there is -- the next one is.

MS. BEST:  Colin McMahon.

THE COURT:  Okay.  So these are experts in what field?

MS. BEST:  Great question.  Media.  I guess, Sameer Somal would maybe say that he's a media expert, but, you know, again, it goes -- and that's why I'm having trouble articulating myself, Your Honor, because --

THE COURT:  Do you have the --

MS. BEST:  Reports.

THE COURT:  -- 213's of the reports?

MS. BEST:  Yes.

THE COURT:  Is it attached as an exhibit?

MS. BEST:  Yeah.  It's -- I think it's 11.

THE COURT:  Exhibit 11.

MS. BEST:  And 13.

THE COURT:  I have 12 for Mr. McMahon.

MS. BEST:  Yes.  He's 12.  Yes.  It's McMahon



THE COURT:  And do you have Somal?  Well, since I have McMahon, I'm going to go with this.

MS. BEST:  We do have it.

MR. CHOSLOVSKY:  We have Somal.

MS. BEST:  Oh, yeah.  You're right.  It's 9.

THE COURT:  Nine?

MS. BEST:  It's Somal's.

THE COURT:  Yeah.  I got it.  And the resume, is it 9?

MS. BEST:  I'm sorry, what?

THE COURT:  There's a resume too or just the --

MR. CHOSLOVSKY:  They didn't give you his resume.

THE COURT:  I'm sorry.  It's their turn, and I'll give you time to respond.  Is the resume included?

MS. BEST:  In his report and the --

THE COURT:  The end of this -- it looks like 20, page 20 is fine.  Yeah, you know, and Justice DiVito in his commentary on the Illinois Rules of Evidence points the Court, and I don't have that commentary with me, but his favorite case is this, I think it's a federal case in which a police officer testifies as an expert regarding exploding packs of currency and how long it takes them to explode.  And his approach to this point is that, experience alone can qualify you as an expert.



It seems like these people have some experience that sets them above lay people, unless you have something and, you know, the Appellate Court and People versus Jones come to the scene as the federal case of 2015 Ill.App.1st 121016.

So let's go to the methodology.  So do you have something in the reports that show me they have no methodology or?

MS. BEST:  Yeah.  I think.  So in our, I mean, where we lay out our arguments and our brief is Page 10 to 12.

MS. BARTON:  About methodology?

MS. BEST:  Correct.  Yeah.

THE COURT:  Yeah.  I mean, just -- I'm thinking about that police officer testifying about the --

MS. BEST:  Well --

THE COURT:  He's just giving strengths and knowledge he has from -- is that what they're doing?

MS. BEST:  No.  So they're -- I mean, they're giving conclusions and opinions on publication, defamation, falsity, all defamation-related injuries, causation, intent, and motive.

THE COURT:  So what are their opinions?

MS. BEST:  And so, there's multiple conclusions



based on plaintiff's narratives.

THE COURT:  So where are the opinions in the report?

MS. BEST:  Throughout, but I think he has the conclusions.

THE COURT:  Is it executive summary?

MS. BEST:  So you start on summary of findings which is on Page 64 for Mr. Sameer.

MR. CHOSLOVSKY:  There's something more basic on Page 6.

THE COURT:  All right.

So the impact of the defendant's actions and reach of the accusations, false accusations are catastrophic.  The depth and breath...

(Viewing document.)

THE COURT:  So what's your argument with respect to these and the methodology?

MS. BEST:  Well, the damages.  So when he's giving opinions on economic rehabilitative, physical, emotional, and reputational.  So in the deposition it shows that he cannot articulate his methodology as how he gets to any of these numbers.  And it's fraud.  And it's not accepted.

THE COURT:  So numbers -- what numbers has he come



up with?

MS. BEST:  Economic damages, 210,000, Page 72.

THE COURT:  Of the dep?

MS. BARTON:  Of the report.

THE COURT:  The report.

MS. BEST:  72 to --

THE COURT:  And do you have some case law on that giving these kinds of numbers?

MS. BEST:  On which part?

THE COURT:  I don't know.  I'm not used to witnesses other than, like, an economist can extract weight from one number to the other, like, current value or something.  Is there some case law that helps me in deciding whether, obviously, I think these other things, this sort of what the media effect of this, that sounds like something somebody with experience in media can testify.  But as to what numbers should be awarded, I'm not sure about that.  So I was just thinking that might be problematic and I was wondering if you have any case law.

MR. CHOSLOVSKY:  Can I respond, Judge?

THE COURT:  Wait until they're finished, and then I'll hear what you have to say.

MS. BEST:  No.  I mean, just as you stated, Judge.



I mean --

THE COURT:  Do you -- it sounds like --

MS. BEST:  There's cases out there.  They're not a lawyer, they're not a doctor, you know, they don't have --

THE COURT:  All right.  So the objection you have really is to these dollar amounts coming in?

MS. BARTON:  Well, I think there's also a finding about emotional damages.

MS. BEST:  Physical.

MS. BARTON:  I mean, certainly he's not qualified to testify about emotional and physical damages.

THE COURT:  Where is that?  Let me see.

MS. BEST:  That's on Page 74 and 75 of the report.

MS. BARTON:  Of his report.

THE COURT:  All right.  Let me hear from Mr. Choslovsky.

Do you want them to testify your experts as to these numbers, economic damages, and rehabilitative damages?

MR. CHOSLOVSKY:  Yeah.  He's a defamation damage expert witness.  Nobody has said here --

THE COURT:  Is there a case that tells me that he can say what the value of these things are?



MR. CHOSLOVSKY:  Yes.  There's --

THE COURT:  Give me the name of the case.

MR. CHOSLOVSKY:  I don't have the case in front of me.  Here's what you need to know, Judge.

THE COURT:  I'm just a generalist, Mr. Choslovsky.  And I understand you get a little irritated with me, but I have to ask questions and I apologize for that.

MR. CHOSLOVSKY:  You --

THE COURT:  We allow a value as to value of services.  We allow testimony as to value of labor.  We allow value as to the value of corporations.  We allow testimony as to the value of business.  We allow testimony as to one's profits.  We allow testimony as to the value of a parcel of land.  We allow testimony as to the value of legal services and all these things are permitted under Rule 702 and 703.

So I'm just a newcomer.  I don't know anything about defamation.  And I was just wondering if there's a case that allows somebody to tell me what the economic damages are by putting a number on it.  And if there isn't one, that's fine.  I just want to know if there is one.

MR. CHOSLOVSKY:  There are.  In fact, just on Wednesday.  I don't have it in front of me.  This



expert, Sameer Somal, sent it to the courtroom we go back.  He's not just any expert in defamation.  He may be the country's leading expert on defamation and --

THE COURT:  Has his testimony been received by any other Court on the basis of an opinion?

MR. CHOSLOVSKY:  Only on Wednesday of this week, two days ago, he was in California testifying in court. He has appeared in dozens of cases.  They don't even give you his report, Judge.  His report is four hundred and something pages because the appendixes are all of his methodology.  So if I knew we were doing this, I'd have brought you his report which is about this big (indicating.)  So your original comments were spot-on, which was that's what Cross-Examination's for, that's what -- they have a rebuttal expert.  They haven't told you that.  They hired a rebuttal expert.  They gave me his report on Tuesday night at midnight.  So they have an expert to rebut him if they want to.  It's all fair game.  And if you want to get into the weeds of his report, where he's giving reports like this dozens of times in defamation cases.  And I think you'll be super impressed if you read his report.  I would love for you to you read his report.

THE COURT:  In fact, he's the substance of a



federal decision, in which granted the motion to strike is going to be the substance.

MR. CHOSLOVSKY:  One portion.  Correct.

THE COURT:  Well, then this is --

MR. CHOSLOVSKY:  Correct.  If I had an opportunity to respond, which is -- it's the only case out of about 15 that he's appeared on defamation damages.  They gave you that case.  And even there, even in the federal case, that one, he was still -- he owns a company whose sole purpose is rehabilitating people's reputations when they're defamed.  That's his company.  That's what they do.  He's written 75 articles on defamation damages.  He speaks of the --

THE COURT:  Did they cite this case?

MS. BARTON:  Yeah.  It's on Page 11 of the report, Your Honor.

MR. CHOSLOVSKY:  Of course, they cited it.  That's the only thing they have.  If I'd be able to respond, I'd give you a case from Wednesday where he was certified as an expert to talk about that.

THE COURT:  And no the Court is not precluding you from responding.  These were filed on Wednesday.  It was set for a pretrial hearing as to all motions in limine today.  I, you know, nobody's surprising you with the



fact that we're doing a pretrial today.  And I just --
you keep saying if you were allowed to file a response.
Nobody precluded you from filing a response to the
motions.  So I just -- you're free to file responses.
You were free to file them prior to the pretrial.  And I
just, you know, and I welcome anything you have to
contribute on this.

MR. CHOSLOVSKY:  Wait, wait.  I want to make a
record.  I --

THE COURT:  You can make a record at the conclusion
of the hearing, not now.

MR. CHOSLOVSKY:  His report, they have not given
you, it's four hundred and some pages.  He's been
retained in dozens of cases to do this, which his CV
says, which they did not give you his CV.  It's the
first appendix to the report.  If there's any question,
you should at least have his full report that they
want --

THE COURT:  Now, it seems this case favors you.

MS. BARTON:  Your Honor, the Florida Court did bar
Mr. Somal on the economics issue.

THE COURT:  On the title this is based on his
collection review of prior defamation cases.

MS. BARTON:  That's right.

THE COURT:  Is that what he's doing here?

MS. BARTON:  Yes.

MS. BEST:  Absolutely.  One of many things that he's doing.

MR. CHOSLOVSKY:  Can I respond to that or no?

THE COURT:  I think I would like to see more with respect to considering these motions to bar experts. I'd like to reserve ruling --

MS. BEST:  Okay.  I understand.

THE COURT:  -- On those matters.  And, you know, I'll review the case law and the materials, and then do that after we have some time in a couple weeks. Obviously this is significant.

MS. BARTON:  Yes.

THE COURT:  So I don't want to do it now.  Okay.

MS. BARTON:  I appreciate that, Your Honor.

MS. BEST:  Thank you, Your Honor.  Thank you, Judge.

THE COURT:  Are there any further defendant's motions in limine?

MS. BARTON:  No, but based on the exhibits list that we were provided and the witnesses, we may have others.

THE COURT:  I welcome them.

